| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| Benjamin F. Beideman<br>215 Nantucket Road<br>Forked River, NJ 08731<br>Phone: 609-207-3056<br>Email: b2020@beideman.net | |
| In Re:<br>Benjamin Frederick Beideman<br><br>Debtor | Case No.:    22-16418-KCF<br>Chapter:    7<br>Hearing Date:    December 6, 2022<br>Judge:    Kathryn C. Ferguson |

FILED
JEANNE A. NAUGHTON, CLERK
NOV - 3 2022
U.S. BANKRUPTCY COURT
TRENTON, NJ
BY_____DEPUTY

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS AND DAMAGES FOR VIOLATIONS OF 11 U.S.C. § 362(a) BY CREDITOR CAVALRY SPV I LLC

The subject of this memorandum is the Motion for Sanctions and Damages for Violations of 11 U.S.C. § 362(a) by Creditor Cavalry SPV I LLC.

The Movant, seeking sanctions and damages for violations of the law, is Benjamin Frederick Beideman ("Debtor"), the *pro se* debtor in this Chapter 7 bankruptcy case.

The parties that are alleged to have caused injury are Cavalry SPV I LLC ("Cavalry") and their law firm, Apothaker Scian P.C. ("Apothaker"). Together, Cavalry and Apothaker are referred to in this memorandum as the "Respondents".

**Introduction**

In this case, creditor Cavalry SPV I LLC and their law firm Apothaker Scian P.C. engaged in a pattern of conduct that demonstrates contempt toward the automatic stay, codified at 11 U.S.C. § 362(a). Despite the filing of a bankruptcy case over two weeks before, they repeatedly requested that banks be levied to collect on a judgment listed in the petition, for an underlying unsecured credit card debt also listed in the petition. They were,

of course, notified of the bankruptcy as soon as the case was filed. Accordingly, upon Debtor's first receipt of Notice of Levies, he first felt this was an accident that would be quickly cleared up as soon as Respondents were aware of their error. However, Debtor was wrong. Despite a personal letter to Apothaker, and multiple objections that were submitted to the Superior Court that had jurisdiction over the docketed judgment, the levying of banks continued, and continued aggressively. In all, ten banks were levied. Four bank accounts had funds placed on hold pending further order of the Superior Court.

Throughout the course of the levying, over a dozen individual instances of notification about the bankruptcy, and about the automatic stay, were given to Apothaker. Several more were given directly to Cavalry.

After all of this, over five weeks after the petition was filed, two of the banks had their levies released. While no explanation, apology, or offer to "make things right" has been offered by Respondents, it does appear that, at some point, they did realize the error of their ways.

However, even then, the levying was stopped so sloppily that additional funds were frozen a week later, requiring still another objection to be brought before the Superior Court.

In the middle of this process of filing objections, Debtor determined that a Motion seeking to hold Respondents in contempt should be brought before this Court. Debtor had suffered damages, had incurred costs, and had some emotional impact due to the prospect that his limited funds, thought to be exempt and safe by the bankruptcy filing, may actually be taken from him, while he is insolvent and greatly in need of those limited funds. Furthermore, upon research of similar cases, Debtor determined that the fact pattern in this matter may constitute, to some extent, "appropriate circumstances" meriting the consideration of the imposition of punitive damages.

**Applicable Law**

The specific section of the United States Code that governs sanctions and damages for violations of the automatic stay in this case is 11 U.S.C. § 362(k)(1), which states:

> *(1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.*

In addition, key to assessing if a given act is a violation of the automatic stay, it is necessary to know what acts are stayed. With respect to this case, the following selected sections of 11 U.S.C. § 362(a) are most applicable:

> *Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 ... operates as a stay, applicable to all entities, of—*
>
> *(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;*
>
> ...
>
> *(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;*
>
> ...
>
> *(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; ...*

In this case, Debtor can demonstrate that he suffered actual damages, in the form of bank charges, the costs of printing, and postage. Debtor is self-represented and thus incurred no attorneys' fees, which would otherwise be recoverable. To the extent that emotional distress can be considered an actual damage in the Third Circuit, he believes that he may have suffered such damages, albeit to a limited extent. Debtor also believes that the facts in this case are appropriate for strong consideration of the imposition of punitive damages.

**Essential Elements to Establish a Violation**

To establish a willful violation of the automatic stay under the applicable law, a party has the burden of proof, by a preponderance of the evidence, to show:

(1) that a bankruptcy petition was filed by the debtor;

(2) that the debtor is an individual under the automatic stay provisions;

(3) that the creditor had notice of the petition; and

(4) that the creditor's actions were in willful violation of the stay.[1]

If a party meets that burden, then, for damages to be awarded, courts have held that the party also must establish that they suffered injury because of the violation. Provided the debtor establishes that, the law provides that the party *shall* recover actual damages, costs, and attorneys' fees (if any).

In addition, a debtor seeking punitive damages must establish that the nature of the violation constitutes "appropriate circumstances", as indicated in 11 U.S.C. § 362(k)(1) and further refined through relevant judicial decisions. If that is established, then the Court *may* award punitive damages, at its discretion.

Finally, under general principles of agency law, bankruptcy courts have imposed joint and several liability on creditors and their attorneys for violating the stay. Debtor believes that the facts in this circumstance merit finding both Cavalry and Apothaker liable. Though Apothaker was the primary recipient of the notifications, the actions (and lack thereof) taken by them were done on behalf of Cavalry. While it's speculative on the part of Debtor, based on the timing from when documents were received to the occurrence of levy withdrawals, it may be that the later notifications to Cavalry were the catalysts behind the withdrawals. If that's the case, then Apothaker may be the primary liable party.

**A Bankruptcy Petition was Filed by Debtor**

When a bankruptcy petition is filed, the automatic stay provisions of 11 U.S.C. § 362(a) take effect and pre-petition creditors are prohibited from taking certain actions to collect their debts.[2] It stands to reason, then, that for any acts to be potential violations of the stay, the stay must be in effect when the act was committed.

In this case, Debtor produces ample evidence that establishes the filing of a bankruptcy petition. The petition itself is a matter of public record and is on the docket in this case *(Doc. 1)*. In addition, the Clerk of the Bankruptcy Court confirmed the filing by producing a Notice of Bankruptcy Case Filing *(Exhibit B)*. This Notice

---

[1] *In re Galmore*, 390 B.R. 901 (Bankr. N.D. Ind. 2008)
[2] *In re Vitreous Steel Products Co.*, 911 F.2d 1223 (7th Cir. 1990)

is provided with the Seal of the Court printed upon it and constitutes legal notice that the bankruptcy case has been filed. Finally, this very Motion is brought as a contempt action under the bankruptcy case begun by the filing of his petition, so its existence upon the docket in the case begun by way of filing the petition, should be considered strong evidence that there is a bankruptcy case to which the Motion is attached.

Debtor also clearly establishes that this petition was filed by Debtor through his legal signature on appropriate forms and pleadings. Some of these are on the case docket in electronic form (which should have the same force and effect of an actual pen and ink signature), due to his use of the Court's electronic self-representation tool ("eSR") *(Doc. 1 and Doc. 2)*. However, other submissions do include his actual, physical signature *(Doc. 15)*. In this case, the petition was filed very directly by Debtor, given that he used eSR, but of course, petitions filed for debtors with the assistance of counsel or other petition preparers also meet this definition.

In the vast majority of cases, it is the filing of this petition that triggers the full protection of the automatic stay. There are limited exceptions at 11 U.S.C. § 362(c)(3) for individual debtors that file multiple petitions in a one-year period, which is not applicable in this case. However, even in those cases, the stay remains available, in some cases automatically for 30 days, and in all cases by bringing a motion that establishes clear and convincing evidence to impose, in those instances, what might be termed the not-so-automatic, "automatic stay".

Debtor's initial petition filing, like many, was not perfect – yet the stay was in effect while time was given to remedy the deficiencies. Because the filing was completed through the eSR, which currently cannot process filing fees or certain documents, these items needed to be delivered directly to the Court. Indeed, in this case, the Court provided notice that the mandatory Certificate of Counseling was not submitted with the petition *(Doc. 5-1)*, the filing fee was not yet paid *(Doc. 5-2)*, and a rule requiring *pro se* debtors to submit a copy of their government identification *(Doc. 6)* was not yet complied with.

The Court issued an Order to Show Cause *(Doc. 5)* as to why the case should not be dismissed due to these deficiencies. This Order provided Debtor with instructions on how to remedy each of these deficiencies, set a hearing date of September 13, 2022, and informed Debtor that "if **all** required documents are filed with the

Clerk before the hearing date, this Order to Show Cause will be vacated and no appearance is required." (Emphasis in original.)

Debtor did precisely that – he immediately submitted the filing fee and all of the requested documents *(Doc. 12 and 13)*. He also provided the Certification of Completion of Instructional Course Concerning Financial Management, which is required post-filing but before a discharge can be granted *(Doc. 14)*. Upon receipt and processing, the Clerk noted on the docket that, "Remark - No Documents Missing - All Required Documents Filed." *(Docket remark 08/19/2022)*. Accordingly, the Order to Show Cause was vacated by the Court without the need for a hearing *(Minute Order of 09/13/2022 by Honorable Kathryn C. Ferguson)*.

## Debtor is an Individual Under the Automatic Stay Provision

In order to be eligible for damages for violations of the automatic stay, a debtor must be an "individual" under the automatic stay provision.[3] Other types of debtors and non-debtor persons, such as those that attempted a filing without the requisite consumer counseling requirement being met, are not eligible for damages.

In this case, Debtor clearly establishes that he is an individual, being a natural person and having met the consumer counseling requirement, and thus is qualified to be eligible for the recovery of damages for injuries that is set out in 11 U.S.C. § 362(k)(1).

To respond to and comply with the Order to Show Cause, Debtor submitted a copy of his New Jersey Driver License *(Doc. 13)*, which was found sufficient to meet the requirements of the rule requiring proof of identity from *pro se* debtors. He also submitted a compliant "Certificate of Counseling" *(Doc. 12)*. Finally, the Court is aware of the Social Security Number of Debtor, as he filed a "Statement About Your Social Security Numbers" which is associated with this case, though not on the public docket. Both a New Jersey Driver License and a Social Security Number are credentials that are exclusively issued to natural persons.

---

[3] *In re Gossett*, 369 B.R. 361 (Bankr. N.D. Ill. 2007)

**Creditor Had Notice of the Petition**

In order to be potentially in violation of the automatic stay, a creditor must be aware of the bankruptcy petition. This does not need to be official notice.[4] However, in cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate.[5]

In this case, Debtor clearly establishes that both Respondents were given copious notice of the bankruptcy and the automatic stay, both official and otherwise, through several different means – notice directly from the Court's Bankruptcy Noticing Center ("BNC"), electronic notice from New Jersey's state courts, a letter sent via email from Debtor and the same letter, along with three formal objections sent by Certified Mail with return receipt requested ("CMRRR"). Further, while it is not required that Respondents have actual knowledge of the automatic stay itself (knowledge of the bankruptcy case is sufficient), in this case, they also received several direct references to the automatic stay. As the attorney involved in the case, Apothaker received the lion's share of the notices. However, Cavalry also received multiple notifications, including electronic notifications directly from the BNC, along with several CMRRR mailings.

The following table summarizes the instances of notification that were described in the Certification in support of this Motion:

| Table 1: Instances of Notification | | | | |
|---|---|---|---|---|
| NOTICE DATE | NOTICED PARTY | FORM OF NOTICE | METHOD OF NOTICE | PROOF OF NOTIFICATION |
| 08/15/2022 | Cavalry | Notice of Chapter 7 Bankruptcy Case *(Doc. 4)* | BNC (email) | Exhibit F at 3 |
| 08/17/2022 | Apothaker | Notice of Chapter 7 Bankruptcy Case | BNC (postal) | Exhibit F at 2 |
| 09/02/2022 | Apothaker | 09/02 Letter to Apothaker *(Exhibit E)* | CMRRR | Exhibit F at 6-7 |
| 09/02/2022 | Apothaker | 09/02 Letter to Apothaker | Email | Exhibit F at 8 |
| 09/07/2022 | Apothaker | 09/07 Objection *(Exhibit H)* | eCourts | Exhibit F at 9 |
| 09/08/2022 | Apothaker | 09/07 Objection | CMRRR | Exhibit F at 10-11 |
| 09/08/2022 | Cavalry | 09/07 Objection | CMRRR | Exhibit F at 12-14[6] |
| 09/08/2022 | Apothaker | Clerk Posting of 09/07 Objection | eCourts | Exhibit F at 15 |
| 09/08/2022 | Apothaker | Notice of Exemption Hearing | eCourts | Exhibit F at 16 |
| 09/16/2022 | Apothaker | 09/16 Objection *(Exhibit J)* | eCourts | Exhibit F at 17 |
| 09/16/2022 | Apothaker | 09/16 Objection | CMRRR | Exhibit F at 18-19 |

---

[4] *Green Tree Servicing, LLC v. Taylor*, 369 B.R. 282, 286-87 (S.D. W.Va. 2007)
[5] *Fleet Mortg. Group v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999)
[6] It should be noted that the USPS tracking for this mailing does not indicate delivery. However, the Return Receipt was returned (albeit in a mutilated form), so the tracking fault is a probable USPS error. In addition, it does appear that the person that signed this Return Receipt is the same as the person that signed the subsequent Return Receipt to Cavalry *(Exhibit F at 20-21)*.

| 09/16/2022 | Cavalry | 09/16 Objection | CMRRR | Exhibit F at 20-21 |
| 09/19/2022 | Apothaker | Clerk Posting of 09/02 Letter to Apothaker | eCourts | Exhibit F at 22 |
| 09/20/2022 | Apothaker | Clerk Posting of 09/16 Objection | eCourts | Exhibit F at 23 |
| 09/30/2022 | Apothaker | 09/30 Objection *(Exhibit K)* | eCourts | Exhibit F at 24 |
| 09/30/2022 | Apothaker | 09/30 Objection | CMRRR | Exhibit F at 25-26 |
| 09/30/2022 | Cavalry | 09/30 Objection | CMRRR | Exhibit F at 27-29 |
| 10/03/2022 | Apothaker | Clerk Posting of 09/30 Objection | eCourts | Exhibit F at 30 |

Every instance of notification enumerated above was related to a document that made specific reference to both the bankruptcy and the automatic stay, with the sole exception of the 09/08/2022 Notice of Exemption Hearing, which was generated by the Superior Court's case management staff. That document did reference the need to produce evidence of bankruptcy at the October 21, 2022 hearing, but did not make a specific reference to the automatic stay.

The "Notice of Chapter 7 Bankruptcy Case – No Proof of Claim Deadline" (Official Form 309A) *(Doc. 4)* was sent by the BNC upon filing of the petition. This official notice makes direct reference to the bankruptcy case, as follows:

> *"For the debtors listed above, a case has been filed under chapter 7 of the Bankruptcy Code."*

It also contains a detailed reference to the automatic stay and to the consequences for violating it, stating:

> *"The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtors or the debtors' property. For example, while the stay is in effect, creditors cannot sue, garnish wages, assert a deficiency, repossess property, or otherwise try to collect from the debtors. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although debtors can ask the court to extend or impose a stay."*

In most cases, BNC noticing to the correct address is sufficient to show successful notification. However, in this case, the Respondents both received much more notice.

The September 2, 2022 letter to Apothaker *(Exhibit E)* constitutes Debtor providing personal notice of the bankruptcy case and of the automatic stay, and was sent by email and CMRRR. The first two sentences of the letter read as follows:

> *"The purpose of this letter is to confirm that you have caused a levy against my account at OceanFirst Bank NA, even though there is a current bankruptcy petition pending. This may be a violation of state and/or Federal law, including, but not limited to, the automatic stay at 11 USC § 362."*

Each of the three formal objections *(Exhibits H, J, and K)* described by Debtor in his Certification in support of this Motion were sent by CMRRR to both Apothaker and Cavalry. All were signed for. Each of them was also electronically submitted by Debtor to the state court docket, generating an eCourts notification. Likewise, each of them was also sent (with original ink signature) to the Superior Court clerk via CMRRR. In each case, after the Superior Court received these originals, they posted them on eCourts, which could be considered duplicative), but which certainly generated an additional eCourts notification to Apothaker. All of these objections were made on the basis of the automatic stay, so it is evident that they referenced the bankruptcy and stay.

The first objection, filed on September 7, 2022, made specific reference to the bankruptcy and the stay, stating in part:

> *"I object to these funds being turned over to the Plaintiff because I filed for Chapter 7 bankruptcy on August 15, 2022, as evidenced by the supporting documents attached. These documents also establish that the specific debt at issue is included as part of the petition, and that the lawsuit captioned above was also fully disclosed to the Bankruptcy Court in the petition.*
>
> *Federal law at 11 U.S.C. § 362 operates as an "automatic stay" – that is, an injunction that prohibits most creditor collection activities, including this bank levy."*

Debtor was dismayed when levies continued a few days later, as the conduct no longer squared as a simple oversight or error, but instead seemed to be intentional. Upon this realization, Debtor filed an additional objection to preserve his rights on the subsequent levies. This second objection *(Exhibit J)* was filed on September 16, 2022 and also contained specific reference to the bankruptcy case, the automatic stay, and included many documents exhibiting evidence of the bankruptcy case. The body of this objection stated, in part:

> *"I oppose all levies that have occurred, and any that may continue to occur, against my accounts since the filing of my bankruptcy case on the basis of the protection provided by 11 U.S.C. § 362(a). It is my contention that, with very limited exceptions, this protection takes precedence over any state law exemptions."*

On September 21, 2022, without any correspondence from Respondents or any activity upon the eCourts docket, the funds from Fulton Bank, NA and OceanFirst Bank, NA were released. It seems that Respondents had "gotten the message" – finally! Debtor believes that, despite their silence, the actions they took to return the funds is a tacit acknowledgement on the part of the Respondents that they realized they'd done something wrong. In addition, a letter from the Ocean County Sheriff's Office to OceanFirst Bank, NA *(Exhibit N)* indicates that Apothaker requested the funds be returned to Debtor "as soon as possible". Collection attorneys generally do not return funds to debtors unless they are required to do so by law, court order, or specific instructions from a client. Doing so in other cases would seem to be contrary to the service they're providing to their client – debt collection.

Yet, several days later, on September 26, 2022, funds were again removed from Debtors account, this time at Chase Bank, NA. Debtor can think of no reason, other than negligence, for this renewed levying. If Respondents decided on September 21, 2022, to release the funds, they should have done so with diligence by contacting each bank that was levied. The failure to treat their obligations pursuant to Federal law with the requisite level of care seems to demonstrate contempt for the automatic stay, and the Court.

As a result of this renewed levy, Debtor sent another objection on September 30, 2022, the date he learned about the levy. Again, specific reference to the bankruptcy case and the automatic stay was included in the body of the objection, as follows:

> *"As I have stated in prior filings, I continue to oppose all levies that have occurred, and any that may continue to occur, against my accounts since the filing of my bankruptcy case, on the basis of the protection provided by the automatic stay. I continue to contend that, with very limited exceptions, this protection takes precedence over any state law exemptions."*

With respect to this element, Debtor believes that the evidence of providing notice upon Respondents rises even above that of a preponderance of the evidence and that clear and convincing is more apt in this case. Even though reaching such a high level of proof is unnecessary to establish damages in this matter, it turned out that such a very high amount of notice was, in fact, necessary to protect Debtor's funds.

**Cavalry's Actions Were in Willful Violation of the Stay**

In order to be found to have violated the automatic stay, it is necessary that the violative actions be "willful". Willfulness can be found when one is aware of the bankruptcy filing and intentionally takes the actions that violate the stay, regardless of whether the creditor intended or even knew it was violating the stay.[7] As the Third Circuit has held:[8]

> *"A 'willful violation' does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional.*
>
> *Whether the party believes in good faith that it had a right to property is not relevant to whether the act was 'willful' or whether compensation must be awarded."*

In this case, Respondents violated the stay with each instance of levying – ten in all. The pre-petition actions of Apothaker on behalf of Cavalry demonstrate that their attempts to collect the debt at issue in the lawsuit were following a course of willful behavior common in debt collection suits. Their post-petition actions continue this willful behavior.

Apothaker had the judgment in the Superior Court lawsuit docketed on June 24, 2022.[9] This action required payment of a filing fee and submission of documents to the Clerk of the Superior Court, a statewide office that performs the docketing function. After this was completed, Apothaker sought a Writ of Execution Against Goods and Chattels on July 15, 2022, which was granted by the Superior Court on August 5, 2022.

According to the Ocean County Sheriff's Office *(Exhibit O)*, the levying of an individual's bank account requires the following:

- *The original Writ with seal PLUS [sic] two (2) copies*
- *The defendant's last known address, Social Security number and account number*
- *The name and address of the bank where the account is located*

---

[7] *California Coast Univ. v. Aleckna (In re Aleckna)*, No. 20-1309 (3d Cir. 2021)
[8] *Cuffee v. Atl. Bus. & Cmty. Dev. Corp. (In re Atl. Bus. & Cmty. Corp).*, 901 F.2d 325, 329 (3d Cir. 1990) (quoting *In re Bloom*, 875 F. 2d 224, 227 (9th Cir. 1989))
[9] As this is within the 90 day preference period, a separate Motion to Avoid pursuant to 11 U.S.C. § 522(h) and 11 U.S.C. § 547(b) will be brought before the Court with respect to the docketed judgment.

Furthermore, for each bank to be served, payment of a $48 fee to the Sheriff is required.

Because the Sheriff requires the name and address of the bank where the levying is to take place, and because they require the payment of a fee for each bank, it seems evident that each bank levying attempt was a willful act.

The ten levy attempts, and the results thereof, are summarized in the following table:

| Table 2: Levy Attempts ||||| 
|---|---|---|---|---|
| DATE SERVED UPON BANK | DATE RECEIVED BY DEBTOR | NAME OF BANK | ACCOUNT(S) LEVIED | AMOUNT LEVIED |
| 08/31/2022 | 09/02/2022 | OceanFirst Bank, NA | Checking 3409 | $510.99 |
| 08/31/2022 | 09/02/2022 | Bank of America, NA | | |
| 08/31/2022 | 09/02/2022 | TD Bank, NA | | |
| 08/31/2022 | 09/02/2022 | Santander Bank, NA | | |
| 09/09/2022 | 09/14/2022 | Wells Fargo Bank, NA | | |
| 09/09/2022 | 09/14/2022 | Fulton Bank, NA | Checking 2768<br>Joint Checking 9540 | $547.91<br>$418.23 |
| 09/09/2022 | 09/14/2022 | Lakeland Bank | | |
| 09/13/2022 | 09/16/2022 | PNC Bank, NA | | |
| 09/14/2022 | 09/16/2022 | M&T Bank | | |
| 09/16/2022 | 09/20/2022 | Chase Bank, NA | Checking 9134 | $1,400.00 |
| | | | TOTAL: | $2,877.13 |

Each of the ten attempts to levy banks that were requested by Apothaker constitute separate, willful violations of the automatic stay. Because the Respondents intended for "the commencement or continuation" of the bank levies to occur, 11 U.S.C. § 362(a)(1) was violated each time a levy was attempted. Specific intent to violate the stay is not required. The intent required is that the actions that violated the stay were intended actions.

**Debtor Suffered Injury Because of the Violations**

In instances where the automatic stay is willfully violated, if there has been no injury, there can be no actual damages to recover.[10] This would also seem to apply to recovery, in appropriate circumstances, of punitive damages.[11]

---

[10] *City of Phila. v. Walker*, 15-01685 (E.D. Pa. Nov. 23, 2015)
[11] *Rosas v. Monroe Cnty Tax Claim Bureau*, 323 B.R. 893, 901 (Bankr. M.D. Pa. 2004)

In this case, though all ten levy attempts were violations of the automatic stay, only 3 banks (and 4 bank accounts) were successfully levied. Accordingly, four direct injuries resulted from three violations of the stay. It could be said, however, that with respect to the emotional state of Debtor, the entire ordeal, including unsuccessful levy attempts – since they caused notices from the Sheriff, could be a contributing factor to consider. It also seems evident that the consideration of possible "appropriate circumstances" to impose punitive damages requires looking at the circumstances at issue in their totality.

The successful levies are summarized in the following table:

| Table 3: Successful Levies | | | |
|---|---|---|---|
| ACCOUNT LEVIED | DATE HELD | DATE RELEASED | AMOUNT HELD |
| OceanFirst Bank, NA – Checking 3409 | 09/01/2022 | 09/21/2022 | $510.99 |
| Fulton Bank, NA – Checking 2768 | 09/09/2022 | 09/21/2022 | $547.91 |
| Fulton Bank, NA – Joint Checking 9540 (50%) | 09/09/2022 | 09/21/2022 | $418.23 |
| Chase Bank, NA – Checking 9134 | 09/26/2022 | 10/06/2022 | $1,400.00 |
| | | TOTAL: | $2,877.13 |

While the loss of access to the funds of Debtor, particularly with his financial condition being so precarious, constitutes some injury, it is difficult to put a price on that injury. This is especially true considering that the accounts with held funds did not result in any overdrafts, so the bank fees charged were less than they could have been otherwise. The bank fees charged are as follows:

| Table 4: Actual Damages | | |
|---|---|---|
| DATE | DESCRIPTION OF DAMAGE | AMOUNT |
| 09/01/2022 | Ocean First Bank, NA – Legal Fee | $125.00 |
| 09/26/2022 | Chase Bank, NA – Legal Fee | $100.00 |
| 10/06/2022 | Chase Bank, NA – Monthly Fee (due to low balance) | $12.00 |
| | TOTAL: | $237.00 |

With respect to the costs of defending against these levies, which are considered actual damages, Debtor incurred printing and postage charges. These are listed in the following table:

| Table 5: Actual Costs (as Damages) of Defending Against Levies | | |
|---|---|---|
| DATE | DESCRIPTION OF COST | COST |
| 09/02/2022 | Printing – Letter to Apothaker (5 copies, 17 impressions each @ $0.05) | $4.25 |
| 09/02/2022 | Postage / CMRRR – Letter to Apothaker (Copies to: Superior Court, Apothaker, Cavalry, Trustee, OceanFirst Bank, NA) | $44.65 |

| DATE | DESCRIPTION | COST |
|---|---|---|
| 09/08/2022 | Printing – 09/07 Objection (3 copies, 17 impressions each @ $0.05) | $2.55 |
| 09/08/2022 | Postage / CMRRR – 09/07 Objection (Copies to: Superior Court, Apothaker, Cavalry) | $27.51 |
| 09/16/2022 | Printing – 09/16 Objection (4 copies, 34 impressions each @ $0.05) | $6.80 |
| 09/16/2022 | Postage / CMRRR – 09/16 Objection (Copies to: Superior Court, Apothaker, Cavalry, Trustee) | $36.68 |
| 09/30/2022 | Printing – 09/30 Objection (4 copies, 8 impressions each @ $0.05) | $1.60 |
| 09/30/2022 | Postage / CMRRR – 09/30 Objection (Copies to: Superior Court, Apothaker, Cavalry, Trustee) | $31.24 |
| 10/18/2022 | Printing – 10/18 Letter to Hon. Wellerson (3 copies, 3 impressions each @ $0.05) | $0.45 |
| 10/18/2022 | Postage / CMRRR – 10/18 Letter to Hon. Wellerson (Copies to: Superior Court, Apothaker, Cavalry) | $22.71 |
| | TOTAL: | $178.44 |

With respect to the costs of bringing this Motion, to date, Debtor incurred PACER charges. Further costs of bringing the Motion will be incurred, including any costs of filing the Motion, service of the Motion package, including Exhibits, upon the parties, and possibly additional PACER research costs if needed to defend a contested Motion. A full accounting of all costs for the Court's review will be made available at the time the Motion is decided if the Court needs such to consider the award of costs. The costs as of the date of filing are as follows:

Table 6: Costs of Bringing Motion

| DATE | DESCRIPTION | COST |
|---|---|---|
| 10/10/2022 | PACER research costs (September 16, 2022 to September 30, 2022) | $87.30 |
| 10/29/2022 | PACER research costs (October 1, 2022 to October 29, 2022) | $55.20 |
| | TOTAL: | $142.50 |

Therefore, as of October 29, 2022, the total of damages and costs is $558.44, as shown in the table below. Further costs are expected to be incurred in order to finalize, print, and deliver this Motion, including all Exhibits.

Table 7: Overall Damages and Costs

| DATE | DESCRIPTION | COST |
|---|---|---|
| 10/06/2022 | Actual Damages | $237.50 |
| 10/18/2022 | Costs (as Damages) of Defending Against Levies | $178.44 |
| 10/29/2022 | Costs of Bringing Motion | $142.50 |
| | TOTAL: | $558.44 |

**The Character of the Violations at Issue Constitutes "Appropriate Circumstances"**

The law provides for the discretionary imposition of punitive damages, provided that "appropriate circumstances" for such exist in the case.[12] While that term is not defined in the Bankruptcy Code, the following factors have been found to be relevant in determining whether to award punitive damages and the amount of such damages:

(1) the nature of the defendant's conduct;

(2) the defendant's ability to pay;

(3) the motives of the defendant; and

(4) any provocation by the debtor.[13]

Other decisions have largely continued to rely on these factors, with the addition of "the level of sophistication of the creditor"[14] to help focus the high bar to impose these sanctions on those creditors that should know better than to thumb their nose at the stay and the Court.

Many violations of the automatic stay are exceedingly minor – an extra phone call or letter to continue trying to collect on a debt. Bank levies could be considered more serious actions than a call or letter, since they deprive a Debtor of their property, even if temporarily. Despite that, Debtor first believed that the initial bank levy was due to an error that would be quickly corrected once Apothaker was contacted – and that it should not rise to the level of needing to be brought to the attention of the Court, or even brought to Cavalry's attention. Debtor purposely did not immediately run to the Bankruptcy Court, or even the Superior Court – he first sent a letter. After there was no response, he then did file an objection in Superior Court to preserve his right to object within a 10-day time period. Only after it became clear that these actions were deliberate, did he decide to bring the matter before this Court. This gradual approach were good faith efforts on the part of the Debtor to not escalate a situation that could damage the reputation of Apothaker with either the courts or their client, quite the opposite of provocation by the debtor.

---

[12] *Lansaw v. Zokaites (In re Lansaw)*, Adv. No. 13–2037, (Bankr.W.D.Pa. Jan. 14, 2015)
[13] *In Re B. Cohen & Sons Caterers, Inc.*, 108 B.R. 482 (E.D. Pa. 1989)
[14] *Varela v. Ocasio (In re Ocasio)*, 272 B.R. 815, 825-26 (B.A.P. 1st Cir. 2002)

Debtor's letter to Apothaker *(Exhibit E)*, sent to them by email and CMRRR, and forwarded by email to the Clerk of the Superior Court, reflected this belief. The letter requested the release of the levy and that they cover the bank fee. In the forward cover message to the Clerk, Debtor stated his (unfortunately unfounded) belief that the levy would be voluntarily withdrawn. Had that occurred, provided that Apothaker agreed to pay the OceanFirst Bank, NA $125.00 bank charge that the levy caused, this Motion would not have been brought.

However, in this case, Cavalry and Apothaker violated the stay numerous times, and then, after they'd decided to release the funds, they did not acknowledge any wrongdoing or offer to remedy the injury they caused. Specifically with respect to Apothaker, the lack of candor about their conduct does not demonstrate the ethical standard that one would hope to see coming from a law practice. But, unfortunately, as in many areas of modern life, ethics are often cast aside.

Debtor believes that the Respondents have the ability to pay punitive damages of an appropriate amount. Apothaker is a law firm with extensive experience in debt collection matters. In April of 2020, it received a Small Business Administration Paycheck Protection Program loan in the amount of $297,567, during which they certified that the loan would help retain 9 persons.[15] More recent information is not readily available on the open-source databases to which Movant can readily access.

Creditor is a special purpose vehicle that owns debt and is itself owned by parent, Cavalry Portfolio Services. They were founded in 2002, publicly available records indicate that they have estimated annual revenues of $60.8M and have 263 employees. They are a member of the trade association RMAi - the Receivables Management Association International. Information from that organization indicates that during the year ending in February 2022, Cavalry contributed at least $25,000 to their legislative fund. It also indicates that they'd contributed to this fund for five or more years.[16]

Determining a precise motive of Respondents is difficult, especially considering their silence to date with respect to this matter. It does seem likely that, without Debtor's objections, they would have retained the funds that were held by the banks. It is unknown if they would have later returned those funds if alerted to the stay

---

[15] https://projects.propublica.org/coronavirus/bailouts/loans/apothaker-associates-pc-1677877200 (Retrieved on 10/25/2022.)
[16] https://rmaintl.org/contribute/rmai-legislative-fund-contributors-22/ (Retrieved on 10/25/2022.)

violation, or if they would have forced a lawsuit against them outside of bankruptcy court for violations of debt collection laws in order to secure return of the funds. Debtor believed their conduct to be accidental until the factors weighing against that assessment piled up quite high. As previously cited, in cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate.[17]

In conclusion, Movant contends that the nature of the Respondent's conduct supports a finding of appropriate circumstances and imposition of some amount of punitive damages, including:

- the number of levy attempts that were made, all of which were done after official notice of the bankruptcy was provided by the BNC;
- the volume of additional notifications that were made to Respondents, especially Apothaker, before the first three bank account holds were withdrawn;
- the fact that a simple letter wasn't enough – formal objections were filed before the Respondents corrected their behavior;
- the careless nature of that withdrawal, requiring a subsequent filing to the Superior Court to have the final levy withdrawn;
- the lack of any attempt to "make things right" by admitting that their conduct was wrong and offering to compensate for the actual damages and costs;
- the sophistication of both Apothaker and Cavalry in being no newcomers to debt collection matters; and
- the size and scale of Cavalry in being one of the nation's largest debt purchasers.

I respectfully request that the Court consider the imposition of punitive damages in this case. If such punitive damages are imposed, I leave it to the Court to decide on what amount they should be. The Court's experience in these matters far exceeds those of the Movant. Movant trusts the judgment of the Court to see that justice is done with respect to a decision to impose punitive damages, and if so, the appropriate amount, given the specific conduct in this circumstance.

---

[17] *Fleet Mortg. Group v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999)

**Summation**

Chapter 7 bankruptcy is a chance for people that are insolvent to have a fresh start. That begins with the automatic stay that goes into effect upon the filing of the petition. The stay is one of the bedrock principles of our bankruptcy system. It would be difficult to imagine the system of bankruptcy that has been put in place by Congress operating smoothly without the automatic stay.

In this case, Cavalry and Apothaker demonstrated contempt toward the stay, and in so doing caused the Debtor to suffer financial damages and incur costs necessary to research his options and defend his property. Upon such review, it then became similarly clear that this Motion would need to be brought. That involved still more work, along with research to understand the state of the law and precedential decisions of the Courts with respect to stay violations.

Upon review of these decisions, it seems that the pattern of facts in this case make it to be a non-trivial series of violations of the stay. While thankfully not involving an assault outside of a 341 meeting[18], the number and manner of notifications about the bankruptcy and the stay given, the sophistication of the Respondents, the number of willful acts, and the lack of diligence in correcting the violations all weigh as factors that may give rise to appropriate circumstances for the imposition of punitive damages.

Throughout this circumstance, as the Debtor realized that Respondent's conduct was not going to be quickly corrected once they were explicitly made aware of the bankruptcy – he found it to be shocking. It certainly injected some emotionality into what is intended to be a fresh start. However, after research and due to his belief that the law is on his side with respect to the conduct of Respondents, he is again looking forward to the chance to rebuild a productive life including the keeping of responsible finances.

Date: 10/31/2022

Signature

---

[18] *In re Westridge*, Case No. 07-35257 (Bankr. S.D.N.Y. Oct. 23, 2009)